# United States Court of Appeals
# for the Fifth Circuit

————————

No. 25-60602
Summary Calendar

————————

United States Court of Appeals
Fifth Circuit

**FILED**
July 8, 2026

Lyle W. Cayce
Clerk

Katrina Danielle Mateen,

*Plaintiff—Appellant*,

*versus*

City of Gulfport, *in their official capacity*; Kenneth Nassar,
*Officer, Gulfport Police Department, in his individual capacity*,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:23-CV-306

———————————————————————

Before Jones, Duncan, and Douglas, *Circuit Judges*.

Per Curiam:[*]

Katrina Danielle Mateen, proceeding *pro se*, appeals the district court's grant of summary judgment to Gulfport Police Department Officer Kenneth Nassar on qualified-immunity grounds arising from the fatal shooting of Mateen's fifteen-year-old son, Jaheim McMillan. The district court concluded that Officer Nassar did not violate the Fourth Amendment

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-60602

and, alternatively, that Mateen failed to show any violation of clearly established law. For the reasons that follow, we AFFIRM.

I

On October 6, 2022, Gulfport Police received a 911 call about a silver Kia Soul with a Georgia license plate. The caller reported that the Kia had multiple occupants, that the occupants were brandishing firearms, and that the Kia had followed the caller's vehicle through red lights.

Officers Kenneth Nassar and Benjamin Ford located a vehicle matching that description in the parking lot of a Family Dollar store. As the officers entered the parking lot and activated their lights, the Kia's occupants moved around inside the vehicle. Two males then exited the Kia and ran along the front of the store. One of them was later identified as McMillan.

The encounter unfolded quickly. Officer Nassar announced "Gulfport Police" and ordered McMillan to stop. McMillan continued running. Officer Nassar then saw a dark object in McMillan's right hand, again ordered him to stop, identified the object as a black handgun, and ordered him to drop it. McMillan continued toward the front entrance of the store. Officer Nassar then fired. The parties dispute whether McMillan pointed the gun at Officer Nassar. But the record and video evidence show that McMillan was holding a gun and had turned to face Officer Nassar when he fired. The gun recovered at the scene was a stolen Taurus 9mm handgun. It had seven live rounds in the magazine and one live round in the chamber.

Mateen sued the City of Gulfport and Officer Nassar under 42 U.S.C. § 1983 and state law. The district court dismissed the claims against the City. Officer Nassar then moved for summary judgment on qualified immunity. Mateen did not timely respond. She later moved for an extension, explaining that she had misunderstood Officer Nassar's filing as discovery. The district court denied the extension, struck her late summary-judgment response,

granted summary judgment to Nassar on the federal claim, and remanded the remaining state-law claims. Mateen timely appealed.

## II

We review a district court's grant of summary judgment based on qualified immunity de novo. *Crane v. City of Arlington, Tex.*, 50 F.4th 453, 461 (5th Cir. 2022) (citing *Aguirre v. City of San Antonio*, 995 F.3d 395, 405 (5th Cir. 2021)). Whether an officer is entitled to qualified immunity involves two inquiries: (1) "whether the officer's conduct violated a federal right," and (2) "whether that right was clearly established at the time of the violation." *Id.* at 463 (citing *Tolan*, 572 U.S. at 655–56). Courts may address either prong first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Once qualified immunity is invoked, the plaintiff bears the burden to "rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Crane*, 50 F.4th at 461 (quoting *Aguirre*, 995 F.3d at 406).

Mateen argues that the district court improperly resolved disputed facts. She emphasizes that McMillan had little time to comply and that the video does not conclusively show that he aimed the gun at Officer Nassar. She also points to Officer Ford's statement that he did not see a firearm. However, we need not decide whether Officer Nassar's use of force violated the Fourth Amendment. *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021). Even assuming that McMillan was trying to evade arrest rather than attack officers, and even assuming that he did not point the gun at Officer Nassar, Mateen has not shown that Officer Nassar violated clearly established law.

A clearly established right must not be defined "at too high a level of generality." *Id.* (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). This inquiry "does not require a case directly on point" but "existing precedent must have placed the statutory or constitutional question beyond debate."

*Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). In other words, "[a]n officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" *Id.* at 105 (quoting *Plumhoff v. Rickard,* 572 U.S. 765, 778–79 (2014)).

Mateen offers *Graham v. Connor*, 490 U.S. 386 (1989), and *Tennessee v. Garner*, 471 U.S. 1 (1985), as the basis for a clearly established right "to be free from the use of deadly force by a police officer unless the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." But the Supreme Court has stressed that "*Garner* and *Graham* do not by themselves create clearly established law outside 'an obvious case.'" *White*, 580 U.S. at 80 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam)).

Mateen does not argue or explain how the relevant facts, which are not materially disputed for purposes of the clearly established inquiry, qualify as an "obvious" violation of clearly established law under *Garner* and *Graham*. *See id.* Nor could she. Police responded to a report that the occupants of the Kia were brandishing firearms and following another vehicle through red lights. McMillan fled from the vehicle in front of an occupied store. He continued running after Officer Nassar ordered him to stop. He had a handgun in his right hand. He did not drop it when commanded to do so. He then turned to face Officer Nassar during a rapidly unfolding encounter.

Mateen's only arguably fact-specific supporting authority, *Cole v. Carson*, 935 F.3d 444, 453 (5th Cir. 2019), *as revised* (Aug. 21, 2019) (en banc), fares no better. *Cole* involved officers shooting a suicidal teenager who had not threatened others and was not fleeing through a public area with a gun. 935 F.3d at 449–51. That case did not clearly establish that Officer Nassar

could not use deadly force against an armed suspect who ignored commands and turned to face him outside an open store. Indeed, the weight of our authority runs contrary to Mateen. *See, e.g.*, *Wilson v. City of Bastrop*, 26 F.4th 709, 716 n.3 (5th Cir. 2022) (finding "no basis" for the proposition that a suspect "posed no threat because he never actually aimed his gun at an officer").[1]

Because Mateen failed to meet her burden to identify a violation of clearly established law, we AFFIRM.

---

[1] Mateen's procedural argument does not change the result. She argues that the district court abused its discretion by striking her late summary-judgment response. But the district court did not grant summary judgment by default. It reviewed the merits and explicitly noted that the same result would follow even if it considered Mateen's late response.